# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BRIAN D. BECKWITH, )<br>JULIA A. HUNTER (a/k/a Julia A. )<br>McAuliffe) (f/k/a Julia A. Beckwith), )<br>MAINE REVENUE SERVICES, and )<br>TOWN OF PORTER, )<br>)<br>Defendants. | Docket No. 2:18-cv-00322-NT |

**ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

The Plaintiff, the United States of America, commenced this action against the Defendant, Brian D. Beckwith, to recover unpaid tax liabilities and to enforce federal tax liens that encumber a parcel of real property (the "Property") located in Porter, Maine, through a forced sale. *See* Compl. (ECF No. 1). The Plaintiff joined as Defendants Julia A. McAuliffe,[1] Mr. Beckwith's ex-wife; the Maine Revenue Services; and the Town of Porter (the "Town"). For the reasons stated below, the Plaintiff's motion for partial summary judgment on Counts I and II[2] is **GRANTED**.

---

[1] In the Complaint, the United States named "Julia A. Hunter." Compl. (ECF No. 1). However, in her Answer, Ms. McAuliffe explained that she "has not gone by the name Julia A. Hunter for nearly 15 years, and was awarded the right to use her name Julia Ann McAuliffe as part of her divorce decree" in 2013. Hunter Answer ¶ 4 (ECF No. 8). As such, I will refer to her as Ms. McAuliffe throughout this Order.

[2] The United States has not moved for summary judgment on Count III, which was pleaded as an alternative ground for recovery.

## BACKGROUND[3]

On or about September 7, 2010, Mr. Beckwith filed his federal income tax returns for 2004, 2005, 2006, 2007, 2008, and 2009 showing tax due in the amounts of $47,681.00, $77,168.00, $37,199.00, $63,775.00, $48,598.00, and $31,122.00, respectively. He filed his 2010 federal income tax return on or about April 15, 2011, showing tax due in the amount of $47,987.00. He filed his 2011 federal income tax return on or about April 15, 2012, showing tax due in the amount of $4,250.00.

The Internal Revenue Service ("IRS") made assessments against Mr. Beckwith of federal income tax liabilities based on each of these returns. The assessments for 2004–2006 were made on October 25, 2010; the assessments for 2007–2009 were made on October 4, 2010; the assessment for 2010 was made on May 30, 2011; and the assessment for 2011 was made on May 28, 2012.[4]

In addition to these assessments, the IRS assessed penalties against Mr. Beckwith for his failure to make estimated tax payments pursuant to 26 U.S.C. § 6654, his failure to make timely payments of taxes due pursuant to 26 U.S.C. § 6651(a)(2), and, for the years 2004–2009 his failure to file timely returns pursuant

---

[3] Mr. Beckwith did not respond to the Plaintiff's summary judgment motion. However, because Mr. Beckwith is proceeding pro se, I will also consider factual assertions that he has made in his verified pleadings, including his Answer to the Complaint. *Moore v. Maine Dep't of Corrections*, No. 1:16-cv-398-NT, 2019 WL 267871, at *2 (D. Me. Jan. 18, 2019), *R.&R. adopted*, 2019 WL 489078 (D. Me. Feb. 7, 2019). Thus, where Mr. Beckwith denied factual assertions stated in the Complaint, I have construed those assertions as disputed. I have determined that the facts set forth in this section are supported by the Plaintiff's Local Rule 56(h) record.

[4] The applicable ten-year statute of limitations is measured from the date of the assessment of the tax. 26 U.S.C. § 6502(a)(1).

to 26 U.S.C. § 6651(a)(1). The IRS made further assessments against Mr. Beckwith for underpayment of interest pursuant to 26 U.S.C. §§ 6601 and 6621.

The IRS gave Mr. Beckwith notice of the assessed liabilities and made demand for payment,[5] but Mr. Beckwith has failed to pay the liabilities in full. After application of all abatements, payments, and credits, Mr. Beckwith owes federal income taxes, penalties, and interest for the tax years 2004–2011 in the total amount of $819,265.78 as of August 9, 2019, plus the ongoing accrual of interest and statutory penalties from that date.

Upon the IRS's assessments against Mr. Beckwith for his federal income tax liabilities for 2004–2011, federal tax liens attached to all of Mr. Beckwith's property and rights to property under 26 U.S.C. §§ 6321 and 6322. The IRS recorded notices of federal tax liens for these liabilities with the Oxford (West) County Registry of Deeds on August 15, 2011, February 25, 2013, and June 9, 2014.

The United States seeks to enforce its tax liens through the sale of real property owned, at least in part, by Mr. Beckwith, pursuant to 26 U.S.C. §§ 7401 and 7403. The Property is located at 568 Kennard Hill Road, Porter, Maine, and is more fully described as follows:

---

[5] In his Answer to the Complaint, Mr. Beckwith denies that notice of each liability and demand for its payment was properly made upon him. Beckwith Answer ¶ 8 (ECF No. 9) (denying paragraph 8 of the Complaint). He adds that he "has never been fully shown payments that were taken from his account and applied to the liabilities." Beckwith Answer ¶ 8. However, the Certificates of Assessments, Payments, and Other Specified Matters each list several notices, including lien notices and statutory notices of balance due and intent to levy. *See* Pl.'s Ex. 1 (ECF No. 38-1). Such Certificates are "presumptive proof" that the Internal Revenue Service gave notice of the assessments. *Geiselman v. United States*, 961 F.2d 1, 6 (1st Cir. 1992). The Certificates also contain records of payments made by Mr. Beckwith. *See* Pl.'s Ex. 1.

> A certain lot or parcel of land in Porter (a portion of R-10-24), County of Oxford and State of Maine, situated north of the White Road (a/k/a Foss Mountain Road), west of the Kennard Hill Road and east of the New Hampshire State Line and being more particularly described as follows, to wit:
>
> Bounded on the south by lands now or formerly of Libby and also by lands now or formerly of Becker; on the west by the State Line of New Hampshire; on the north by the northern line of Porter Township and on the east by the westerly sideline of Kennard Hill Road and also by lands now or formerly of Vierra, Johnson, O'Brien, Dahl, Vierra, Staples, Leonard and Becker. Said parcel contains 226 acres, more or less. Also conveying to said Grantees, their heirs and assigns, in common with others, any rights that Skylark, Inc., may have in the White Road (a/k/a Foss Mountain Road).
>
> Subject to an easement for access and utilities and certain restrictions as set forth in a deed from Scott Paper Company to Thomas H. Carpenter, dated January 26, 1977, and recorded in the Oxford County Registry of Deeds, Western District, at Book 225, Page 415.
>
> Also, excepting and reserving from the above described parcel all easements whether prescriptive or of record, including, without limitation, rights of way, road use agreements and utility easements. Also excepting any rights of others to take water from the spring in the field.
>
> Also conveying to the Grantees, their heirs and assigns, a certain lot or parcel of land located in the Town of Porter, County of Oxford, and State of Maine, being the Marshal Libby Homestead, so-called, and more particularly bounded and described as follows, to wit: North by land of R.J. Hanna heirs, East and South by Highway, and West by the New Hampshire line. Being the same premises conveyed by The Inhabitants of the Town of Porter by Collector's Tax Deed of Jacob L. Mason, Collector of Taxes of said Porter, dated February 3, 1926, and recorded in said Registry of Deeds at Book 122, Page 37A.
>
> Being all and the same premises conveyed by Constance R. Hertel to Fortin and Redmond Associates as described in a quitclaim deed dated November 23, 1998 and recorded in the Oxford County (Western Division) Registry of Deeds in Book 392, Page 98.

Mr. Beckwith and his ex-wife, Lorry A. Beckwith, jointly acquired the property in 2001. After their divorce, Mr. Beckwith and Lorry A. Beckwith conveyed sole

ownership of the Property to Mr. Beckwith by a quitclaim deed dated February 10, 2005, and recorded on January 13, 2006. In 2009, Mr. Beckwith conveyed the Property to himself and to Ms. McAuliffe, who was his wife at the time, as joint tenants.

Mr. Beckwith and Ms. McAuliffe divorced in 2013. As an addendum to the divorce judgment, the Maine District Court converted ownership of the Property into a tenancy in common, with Mr. Beckwith and Ms. McAuliffe each possessing one-half interest.[6] The court ordered that the Property be immediately placed on the market for sale and that the net proceeds be divided between Mr. Beckwith and Ms. McAuliffe. The Property was never sold. Rather, Mr. Beckwith continued to live at the Property. On September 16, 2016, the Town of Porter executed a municipal quitclaim deed, conveying to Mr. Beckwith all interest the Town may have acquired in the Property through four tax liens and a land purchase installment contract.[7]

The United States filed this action on August 17, 2018. On November 5, 2018, the United States and the Town of Porter filed a joint motion requesting that the Town not be required to participate actively in the proceedings and stating that, if a judicial sale was ordered, the United States would notify the Town in advance and would request that the proceeds be distributed in accordance with lawful priorities.

---

[6] The addendum further stated that Mr. Beckwith was "permitted to exclusively reside" at the Property "pending sale of same, and shall be solely responsible for all current real estate taxes, maintenance, and any and all other expenses associated with the upkeep of these premises." Pl.'s Ex. 7 (ECF No. 38-7). In addition, the addendum noted the existence of the federal tax lien on the Property, which at the time was in the amount of $564,248.30.

[7] The tax liens were for years 2010, 2011, 2012, and 2015, and the land purchase installment contract was executed on November 27, 2012.

(ECF No. 14). I issued an Order granting that motion on November 8, 2018. (ECF No. 15). I subsequently entered default judgment against Maine Revenue Services, which was served but had not responded to the Complaint. (ECF No. 39).

On August 16, 2019, the United States filed this motion for partial summary judgment, asking me to find

> 1) That defendant Brian D. Beckwith is liable for federal income taxes, penalties, and interest for the tax years 2004-2011 in the total amount of $819,265.78 as of August 9, 2019, plus interest and other statutory additions from that date until fully paid; and,
>
> 2) That the federal tax liens associated with Mr. Beckwith's 2004-2011 income tax liabilities should be enforced through a judicial sale of the real property located at 568 Kennard Hill Road, Porter, Maine, with at least 50% of the net sale proceeds to be distributed to the United States for application toward Mr. Beckwith's tax liabilities.

Pl.'s Mem. Supp. Mot. Summary J. 1 ("Pl.'s Mem.") (ECF No. 37). Mr. Beckwith did not file a response to the motion.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine where a reasonable jury could resolve the point in favor of either party. *Oahn Nguyen Chung v. StudentCity.com, Inc.*, 854 F.3d 97, 101 (1st Cir. 2017). A fact is material where it could influence the outcome of the litigation. *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011). On a motion for summary judgment, courts must construe the record in the light most favorable to the non-movant and resolve all reasonable inferences in the non-movant's favor. *Burns v. Johnson*, 829 F.3d 1, 8 (1st Cir. 2016).

6

This approach is the same for unopposed motions because the "failure of the nonmoving party to respond to a summary judgment motion does not in itself justify summary judgment." *Lopez v. Corporación Azucarera de P. R.*, 938 F.2d 1510, 1517 (1st Cir. 1991); *Dimmitt v. Ockenfels*, 220 F.R.D. 116, 122 (D. Me. 2004). Rather, I must still "inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law." *United States v. Foley*, 729 F. Supp. 2d 371, 373 (D. Me. 2010) (internal quotations omitted) (quoting *Cordero-Soto v. Island Fin., Inc.*, 418 F.3d 114, 118 (1st Cir. 2005)).

Pro se litigants "are not as a rule excused from complying" with procedural summary judgment rules. *Tinkham v. Perry*, No. 1:12-cv-229-GZS, 2015 WL 2092513, at *2 (D. Me. May 5, 2015). However, in certain cases, pro se parties receive "some leniency" in summary judgment proceedings. *Id*. Where a pro se litigant has failed to comply strictly with the summary judgment rules, "factual assertions contained in the verified pleadings and affidavits filed by a pro se litigant generally will be considered in the review of a summary judgment motion." *Moore v. Maine Dep't of Corrections*, No. 1:16-cv-398-NT, 2019 WL 267871, at *2 (D. Me. Jan. 18, 2019), *R.&R. adopted*, 2019 WL 489078 (D. Me. Feb. 7, 2019) (internal citation omitted).

## DISCUSSION

In its motion for partial summary judgment, the United States contends that there is no genuine issue of material fact as to the validity of the federal income tax assessments against Mr. Beckwith. It further asserts that it is entitled to enforce the

liens arising from those assessments through a judicial sale of the Property and is entitled to at least 50 percent of the net proceeds from the sale.

## I. Federal Income Tax Assessments

The United States asserts that Mr. Beckwith "is liable for federal income taxes, penalties, and interest for the tax years 2004–2011 in the total amount of $819,265.78 as of August 9, 2019, plus interest and other statutory additions from that date until fully paid." Pl.'s Mot. for Partial Summary J. 1 (ECF No. 36).

A Certificate of Assessments, Payments, and Other Specified Matters is "presumptive proof of a valid assessment." *Geiselman v. United States*, 961 F.2d 1, 6 (1st Cir. 1992) (internal quotations omitted); *see also United States v. Aivalikles*, 278 F. Supp. 2d 141, 143 (D.N.H. 2003) ("Certificates of assessments on form 4340 are presumptive proof of the amounts due."), *aff'd* 88 Fed. Appx. 424 (1st Cir. 2004). This presumption puts the burden on the taxpayer "to show that the IRS's determination is invalid." *Stuart v. United States*, 337 F.3d 31, 35 (1st Cir. 2003), *abrogated on other grounds by Jennings v. Jones*, 587 F.3d 430, 438–39 n.10 (1st Cir. 2009). A Certificate can also constitute "presumptive proof that the IRS gave notice of the assessments and made demands for payment" from the taxpayer. *Geiselman*, 961 F.2d at 6 (finding that the "First Notice" dates on each assessment were sufficient proof to establish that notice had been provided).

Here, the United States has submitted IRS Forms 4340 (Certificates of Assessments, Payments, and Other Specified Matters) for Mr. Beckwith for each year from 2004–11 (ECF No. 38-1). In addition, the United States has provided a declaration of an IRS employee stating that the IRS made tax, penalty, and interest

assessments and that it properly gave notice of liabilities and demand for payment to Mr. Beckwith. *See* Decl. of Mary Bishop ¶¶ 3–6 (ECF No. 38-2).

Although Mr. Beckwith did not respond to the Plaintiff's motion for partial summary judgment, he advances several arguments in his Answer to the Complaint. (ECF No. 9). First, he states that he "believes the returns as prepared are incorrect as prepared by original accountant, and did not adequately use entitled deductions." Beckwith Answer ¶ 7; *see also* Beckwith Answer ¶ 29 (stating that the "tax preparer did not take all deductions defendant was entitled to, therefore increasing the tax liabilities owed"). Second, Mr. Beckwith asserts that he "was not aware of the liabilities which may have been owed" and "had no idea of any amounts that would be owed until the returns were prepared." Beckwith Answer ¶¶ 29, 32. Third, he denies that he received notice of demand of payment. Beckwith Answer ¶ 8.[8]

However, Mr. Beckwith fails to submit any evidence to rebut the presumption of validity. Merely asserting that the assessments are incorrect is "insufficient to demonstrate any triable issue with regard to the correctness of the tax deficiency assessments." *Aivalikles*, 88 Fed. Appx. at 1; *see also Stuart*, 337 F.3d at 35 (stating that the presumption of validity in IRS Certificates of Assessments and Payments

---

[8] Mr. Beckwith also states that he "has not be[e]n entitled to establish a plan that would work for all parties," that he "was willing to set up a payment plan or other alternative means to settle liabilities for a lesser amount owed," and that he "had contacted a tax resolving agency to perform an Offer in Compromise." Beckwith Answer ¶¶ 3, 9. However, the Certificates of Assessments, Payments, and Other Specified Matters each contain records of "Offer in Compromise Pending" and "Offer in Compromise Rejected, Returned, Terminated." The Certificates do not reflect any action by Mr. Beckwith to seek out an installment plan, and each one—except the 2011 Certificate—contains a record indicating that Mr. Beckwith waived judicial review or withdrew his hearing request. *See, e.g.*, Pl.'s Ex. 1 at 4 (showing an entry on 09-11-2012 stating "COLL DUE PROC HRNG RSLVD BY APPLS-DETRMNATN LTR ISSD, TXPYR WAIVD JUDCL REVW OR WTHDRW HRNG RQST"). Mr. Beckwith has not presented any evidence to counter the Certificates.

"places the burden of proof on [the defendant] to show that the IRS's determination is invalid") (citing *Helvering v. Taylor*, 293 U.S. 507, 515 (1935)). Mr. Beckwith has offered no evidence to support his position that the tax assessments are invalid or incorrect. As a result, I find that the assessments are valid, that Mr. Beckwith received notice of the assessments, and that Mr. Beckwith's total liability as of August 9, 2019, is $819,265.78, which includes all owed taxes, penalties, and interest.

## II. Federal Tax Liens and Sale of the Property

Title 26 U.S.C. § 6321 states,

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

That lien "shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322. Based on the valid assessments, I find that the United States has attached liens to Mr. Beckwith's Property pursuant to § 6321. These liens were recorded in the Oxford (West) County Registry of Deeds on August 15, 2011, February 25, 2013, and June 9, 2014.

Title 26 U.S.C. § 7403 empowers a district court to order the judicial sale of certain property of a delinquent taxpayer. 26 U.S.C. § 7403(c) ("[I]n all cases where a claim or interest of the United States therein is established, [a district court] may decree a sale of such property, by the proper officer of the court, and a distribution of

10

the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States."); *see also United States v. Rodgers*, 461 U.S. 677, 680 (1983). A court can order the sale of property in which a non-delinquent third party possesses an interest and can protect that "third-party interest[ ] through the mechanism of judicial valuation and distribution."[9] *Rodgers*, 461 U.S. at 694. If the property is sold, the non-delinquent party "is entitled, as part of the distribution of proceeds required under § 7403, to so much of the proceeds as represents complete compensation" for its interest. *Id.* at 680.

In addition to Mr. Beckwith, three other parties potentially have interest in the Property. First, Ms. McAuliffe may possess up to a 50-percent interest in the Property. Ms. McAuliffe does not live at the Property and has not opposed the sale. Second, the Town of Porter may have a lien on the Property arising from the nonpayment of property taxes. Pursuant to the United States and the Town's joint stipulation described above, I ordered that the Town need not participate actively in this action and that the United States would provide advance notice to the Town of any judicial sale. Finally, the Maine Revenue Services may have claimed an interest

---

[9] In *Rodgers*, the Supreme Court explained that, when a non-delinquent person has an interest in a property subject to a tax lien, a court may weigh equitable considerations in deciding whether to order the sale of the property. *United States v. Rodgers*, 461 U.S. 677, 708–09 (1983). However, the Court emphasized that "the limited discretion accorded by [26 U.S.C.] § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Id.* at 711. Here, three other parties potentially have interest in the Property, but none raises the equitable concerns contemplated in *Rodgers*, such as prejudice to a spouse currently in possession. *See id.* (noting that, if "the third party has no present possessory interest or fee interest in the property, there may be little reason not to allow the sale").

11

in the Property, but has not entered its appearance in the case and has thus defaulted.

At this stage, the United States only seeks summary judgment on the claim that its tax liens should be enforced through judicial sale of the Property and that at least 50 percent of the net sale proceeds should be distributed to the United States, acknowledging that this Order "will leave unresolved whether Ms. McAuliffe may recover any portion of the other 50% of net sale proceeds of the Property." Pl.'s Mem. 1, 8. I find that any third-party interest can be adequately protected through distribution of the proceeds from the judicial sale of the Property.

## CONCLUSION

For the reasons stated above, the Plaintiff's Motion for Partial Summary Judgment on Counts I and II is **GRANTED**. The Court finds and orders as follows:

1. Brian D. Beckwith is liable to the United States of America for federal income taxes, penalties, and interest for each year from 2004–11 in the total amount of $819,265.78 as of August 9, 2019, plus interest and statutory additions from that date until fully paid.

2. Mr. Beckwith has at least a 50 percent interest in the Property. The federal tax liens associated with the liabilities described in ¶ 1 have attached to the interest that Mr. Beckwith has in the Property, pursuant to 26 U.S.C. §§ 6321–22.

3. The federal tax liens shall be enforced through judicial sale of the Property. Within ten (10) days of the date of this Order, the United States shall

submit a proposed order setting forth the procedures for the sale and the order of priorities in the proceeds.

SO ORDERED.

/s/ Nancy Torresen<br>United States District Judge

Dated this 4th day of December, 2019.